UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
**UNITED STATES**

        -against-                               25 Cr. 176 (MMG)

**LUIGI MANGIONE**

        **DEFENDANT.**
------------------------------------------------------x

## REPLY IN SUPPORT OF MOTION FOR
## INFORMATIONAL OUTLINE OF CERTAIN AGGRAVATING FACTORS

The defendant Luigi Mangione respectfully submits this reply brief in in further support of his motion seeking an informational outline. In its brief in opposition, the Government contends that the law does not *require* it to provide such information to the defense, stating that the "overwhelming majority" of courts have consistently rejected such demands. While it is true that the Federal Death Penalty Act does not explicitly require the Government to provide an informational outline, the overwhelming majority of courts—including every district court in this Circuit that has considered the issue—have found that due process requires the Government to provide the defendant in a capital case with sufficient notice of aggravating factors so that he is able to respond and prepare his case in rebuttal.

    **1. Due Process Requires the Government to Provide an Informational Outline**

In *United States v. Gendron*, 2024 WL 3647779, (W.D.N.Y. August 2, 2024), the Court rejected exactly the arguments advanced by the Government in this case and ordered the Government to provide an informational outline, stating:

> In any capital case, the government must give the defendant notice of all aggravating factors sufficient to enable the defendant to respond and prepare his case for sentencing. *E.g.*, *United States v. Kaczynski*, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001). This right to notice necessarily flows from a defendant's due process right to defend against the government's case. *See Kaczynski*, 1997 WL 34626785, at *18; *Llera Plaza*, 179 F. Supp. 2d at 472. As noted above, a case seeking the death penalty can include broadly worded aggravating factors and myriad facts that might not be admissible in most trials. *See* 18 U.S.C. § 3593(c). What is more, "[t]he severity of the penalty sought ... warrants special efforts to ensure the fairness of the proceedings." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1269 (D.N.M. 2008). So to provide sufficient notice, the government must inform the defendant of the "theories and facts" that it will use to establish each aggravating factor. *Llera Plaza*, 179 F. Supp. 2d at 472.

*Id*. at *2. Further noting that an informational outline assists the Court in performing its function as an "evidentiary gatekeeper" in screening the aggravating factors and the evidence permitted in attempting to prove them, the Court concluded that "Courts may use their "inherent authority" to order the government to provide additional information about aggravating factors in capital cases." Id. Accord, *United States v. Kaczynski*, 1997 WL 34626785, at *19; *United States v. Llera Plaza*, 179 F. Supp. 2d at 473-75; *United States v. Rodriguez*, 380 F. Supp. 2d at 1058; *Lujan*, 530 F. Supp. 2d at 1269-72; *United States v. Hammer*, 2011 WL 6020157, at *3; *United States v. Wilson*, 493 F. Supp. 2d 364, 378 (E.D.N.Y. 2006); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y.2001); *United States v. Savage*, 2013 WL 1934531, *11, *21 (E.D. Pa. May 10, 2013); *United States v. Schlesinger*, 2021 WL 5578901, at *3-4 (D. Ariz. Nov. 30, 2021); *United States v. Con-Ui*, 2016 WL 9331115, at *17-19 (M.D. Pa. Jan. 28, 2016); *United States v. Glover*, 43 F. Supp. 2d 1217, 1222, 1224-28 (D. Kan. 1999); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000); *United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006); *United States v. Duncan*, 2008 WL 656036, at *7-8 (D. Idaho Mar. 6, 2008); *United States v. O'Reilly*, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007); *United

*States v. Diaz*, 2007 WL 4169973, at *3 (N.D. Cal. Nov. 20, 2007); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y.2001); *United States v. Saipov*, Case No. 17-cr-722, Docket Item 472 at 29-30 (S.D.N.Y. Aug. 5, 2022), Docket Item 482 at 1 (S.D.N.Y. Aug. 11, 2022).

Thus, for example, in *U.S. v. Kaczynski*, 1997 WL 34626785, (E.D. Cal., Nov. 7, 1997), the Court, in ordering the Government to provide an informational outline with respect to several of the aggravating factors in the Government's Notice of Intent stated:

> Despite the fact that the notice need not comply with the strictures of Rule 7, it must nonetheless survive constitutional scrutiny. While many of the safeguards incident to criminal prosecutions do not apply to the sentencing process, it is axiomatic that due process principles must be satisfied. See *Clemons*, 494 U.S. at 746; *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). The defendant's ability to defend against the case presented by the prosecutor, which includes advocating for a particular punishment, is one of the "hallmarks" of due process. See *Simmons v. South Carolina*, 512 U.S. 154, 175, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (O'Connor, J., concurring). Moreover, a defendant must not be sentenced to death on the basis of information which he had no opportunity to refute. *Id.* (quotations and citations omitted). Therefore, at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal. In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice.

*Id.* at *18. See also, *United States v. Duncan*, 2008 WL 656036, at *5 (D. Idaho Mar. 6, 2008); *United States v. Rodriguez*, 380 F.Supp. 2d 1041, 1057 (D. N.D 2005); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y.2001)(" An oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide Defendants' vital task of preparing for the penalty phase of trial.") ; *U.S. v. Willson*, 493 F.Supp. 2d 364, 378 (EDNY 2006) ("The category of "victim impact" is vast. The Defendant is entitled to have some sense of how this will be

proved an aggravating factor that the jury could consider in coming to an "*individualized* determination on the basis of the character of the individual and the circumstances of the crime" of whether Wilson should receive a death sentence.") *United States v. Saipov*, Case No. 17-cr-722, Docket Item 472 at 29-30 (S.D.N.Y. Aug. 5, 2022), Docket Item 482 at 1 (S.D.N.Y. Aug. 11, 2022).

### 2. The Information Contained in the Notice of Intent is Inadequate

In seeking to deny the defense the information that it needs to prepare properly for a potential penalty phase, the Government further contends that the defendant has received adequate notice of each aggravating factor – but that contention is false. The Government's Notice of Intent cites two statutory aggravating factors, Grave Risk of Death to Additional Persons and Substantial Planning and Premeditation, but does not include any information concerning the individual or individuals who allegedly were put in grave risk of death by Mr. Mangione's alleged actions, nor does it contain any information regarding the actions that the Government alleges constitute "substantial planning." Indeed, with respect to the two statutory aggravating factors cited by the Government in its Notice of Intent, the Government did nothing more than quote the language of the statute regarding the charged aggravating factor. The government stated that because the shooting is alleged to have occurred on a "public street in midtown Manhattan, directly adjacent to a major New York City hotel, during the early morning hours when people were commuting to work" that is sufficient to justify the statutory aggravating factor of Grave Risk of Death to Additional Persons. Under this logic, the Government is suggesting that every shooting on the streets of Manhattan would satisfy this statutory factor which fails to narrow the type of cases in which the death penalty would be appropriate.

With respect to the non-statutory aggravating factors of Victim Impact and Future Dangerousness, the lack of useful information is even more problematic. The discovery produced by the Government does not provide any indication as to how the Government intends to prove those two aggravators and what evidence it intends to rely on. With respect to Victim Impact, the Notice of Intent simply alleges that Mr. Mangione "caused injury, harm, and loss to the family, friends, and co-workers of Brian Thompson. The injury, harm, and loss caused by MANGIONE with respect to the victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family, friends, and co-workers." The loss of a loved one is of course always both tragic and traumatic to a victim's family and friends. However, to constitute an aggravating factor to support a death sentence, the defense needs more than what is self-evident in every homicide. The Notice does not indicate which family members or co-workers were harmed, what personal characteristics of Mr. Thompson are referred to or the nature of the impact caused by his death on the alleged victims.

The Victim Impact language in the Notice of Intent in this case is virtually identical to the language charged in *Gendron, supra,* where the Government alleged that the defendant "caused injury, harm, and loss to the families and friends of [the victims]. The injury, harm, and loss caused by [Gendron] with respect to each victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family and friends." The court in *Gendron* found that Notice to be insufficient and ordered the Government to "provide an outline with the personal characteristics it intends to prove as to each victim; the identities of the people whom it intends to prove were affected; and the type and scope of the loss, injury, and harm suffered." 2024 WL 3647779 at *5. *See also*, *U.S. v. Glover, supra*, 43 F.Supp 2d 1217, 1225 (D. Kan 1999) ("The court finds that the defendant is entitled to greater specificity

regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the "permanent harm." For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed "aggravating" in this case."); *U.S. v. Llera Plaza, supra,* 179 F.Supp. 2d 464, 475, (E.D. Pa. 2001) ("in order to allow the defendants to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentencing hearing will be necessary to review that evidence, the government will be ordered to submit an outline of its proposed victim impact evidence."); *U.S. v. Bin Laden*, *supra; U.S. v. Wilson, supra.*

With respect to Future Dangerousness, the Notice of Intent alleges that Mr. Mangione "presents a future danger because he expressed intent to target an entire industry, and rally political and social opposition to that industry, by engaging in an act of lethal violence; and he took steps to evade law enforcement, flee New York City immediately after the murder, and cross state lines while armed with a privately manufactured firearm and silencer." The Notice does not indicate when and where Mr. Mangione expressed an intent to "target an entire industry" or how he intended to target an entire industry. To the extent that the Notice alleges that Mr. Mangione expressed an intent to rally political and social opposition to that industry (i.e., the health insurance industry), that does not make him a future danger, but rather simply indicates that he intended to exercise his First Amendment rights. In fact, Mr. Mangione never stated anything publicly, released anything publicly or expressed anything online to suggest this was his intention. Law enforcement, prosecutors and the Mayor of New York City are solely responsible for the very fear they are now attempting to attribute to Mr. Mangione. As for evading law

enforcement and traveling across state lines with a firearm and a silencer, those facts are relatively common in homicide cases and thus fail to narrow the type of cases in which the death penalty would be appropriate. Finally, it should also be noted that upon information and belief, United Health Care historically received numerous threats that pre-date December 4th, 2024, thus the defense is entitled to understand the scope of what the Government will attribute to Mr. Mangione to justify his execution.

Recognizing the weakness of this aggravating factor and in an attempt to justify its inclusion in the Notice of Intent, the Government, in its opposition brief, alleges that Mr. Mangione represents a continuing threat to public safety because the murder he allegedly committed "was motivated not by personal animus, but by a broader intent to send a message and inspire hostility toward an entire industry." Even if true, the defendant's alleged intent to call attention to the abuses of the health insurance industry in denying or delaying needed medical services does not prove that he was advocating the use of violence against other members of the health insurance industry in the future. Indeed, there is not a shred of evidence in the terabytes of discovery produced by the Government to date that indicates that Mr. Mangione was advocating the use of violence by others against members of the health insurance industry or anyone else for that matter. It is precisely because the discovery produced to date does not provide any evidence that Mr. Mangione presents a future danger to public safety that the defense is asking that the Government be required to provide an informational outline indicating how it intends to prove this aggravating factor.

To further support their position that Mr. Mangione poses a future danger, the Government directs the court to a website created by counsel, www.luigimangioneinfo.com, as somehow evidence that he poses a future danger. This website was created by counsel, guided

by Federal Rule 23.1, to dispel misinformation and efficiently address the numerous daily requests we receive from members of the public and press, regarding the three simultaneous prosecutions Mr. Mangione faces. Additionally, numerous United States Bureau of Prisons webpages became inactive following the January 20th administration transition, leaving a void of information on proper processes.  Counsel wanted to ensure that members of the public were following proper legal procedures, to reduce any imposition on Bureau of Prison staff.  Since his arrest and predating the launch of this website more than two months later, Mr. Mangione has received thousands of unsolicited letters from all over the world.  This outpouring of support has created an understandable backlog for the Bureau of Prisons, causing Mr. Mangione to often receive letters months after they were sent.  A frequently asked question to counsel is whether Mr. Mangione has received a particular correspondence.  To address this backlog issue, a simple mail catalogue was created to inform the people who take the time to write to Mr. Mangione so they can see whether their letters were read.

    Most alarmingly, and in an attempt to prejudice potential jurors and thereby Mr. Mangione's right to a fair trial, the Government, in its opposition brief, attempts to link him to other recent killings, including the recent murder of four people in Manhattan by Shane Tamura, writing that:

> Since the murder, certain quarters of the public—who openly identify as acolytes of the defendant—have increasingly begun to view violence as an acceptable, or even necessary substitute for reasoned political disagreement. The defendant poses a continuing danger not only in a personal capacity, but also because he has sought to influence others.

    The Government is well-aware that there is absolutely no link between Mr. Mangione and Mr. Tamura and there is no evidence that Mr. Tamura was influenced in any way by the murder of Mr. Thompson or by Mr. Mangione's writings criticizing the abusive practices of the health

insurance industry that prioritize profits over the needs of the insured, and are currently under investigation by the Department of Justice. There is also no evidence that Mr. Mangione has done anything since his arrest to incite or foment violence against the health insurance industry or against anyone else for that matter. Mr. Mangione, whose emails and telephone calls are recorded and monitored by the Government, has been a model inmate, working as an orderly on his unit and earning a clean disciplinary record. If the Government had evidence that Mr. Mangione was advocating or fomenting violence against the health insurance industry or against anyone else for other ideological reasons, that evidence would surely have been mentioned in its Notice of Intent and highlighted in the Government's opposition brief. The Government's silence on this issue is telling and clearly shows why the defense needs an informational outline in this case. Mr. Mangione is no more responsible for the actions of Mr. Tamura or any other alleged killer whose actions followed his arrest than the President is responsible for the alleged mishandling of classified documents by those who served with him, before him or after him. In fact, Mr. Mangione condemns these very acts of violence that the Government is attempting to attribute as being inspired by him.  The Government's attempt to link Mr. Mangione to the likes of Shane Tamura without any evidence is further proof of the political nature of the tragically unfortunate decision to seek to execute Mr. Mangione. If the Government intends to prove that Mr. Mangione continues and will continue to present a danger to public safety, it should be required to inform the defense of the evidence it intends to use to prove that aggravating factor so that the defense can be prepared to refute it and to better enable this Court to determine whether such evidence indeed is "aggravating."

    For the reasons discussed above, and based on the authorities cited herein and in our initial brief, it is respectfully submitted that the Court should follow the opinions of every district

court in this circuit to have ruled on this issue and order the Government to provide an informational outline detailing the evidence on which it intends to rely to prove the statutory and non-statutory aggravating factors alleged in its Notice of Intent.

Dated: September 5, 2025
      New York, New York

                                              MOSKOWITZ COLSON
                                              GINSBERG & SCHULMAN, LLP

                                                    /s/ Avraham Moskowitz
                                              Avraham C. Moskowitz
                                              Eylan Schulman
                                              Christopher R. Neff

                                              AGNIFILO INTRATER LLP
                                              Karen Friedman Agnifilo
                                              Marc Agnifilo
                                              Jacob Kaplan
                                              *Attorneys for Luigi Mangione*

TO:   Clerk of Court, *by ECF*
         All Counsel of Record, *by ECF*