Q1UJMANC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA,

v.                                    25 Cr. 176 (MMG)

LUIGI MANGIONE,

                                      Conference
            Defendant.
-------------------------------x

                                      New York, N.Y.
                                      January 30, 2026
                                      11:00 a.m.


Before:

                HON. MARGARET M. GARNETT,

                                      District Judge


                         APPEARANCES

SEAN S. BUCKLEY
     Attorney for the United States Attorney
     Acting Under Authority Conferred by
     28 U.S.C. 515
BY:  DOMINIC A. GENTILE
     JUN XIANG
     ALEXANDRA S. MESSITER
     THOMAS JOHN WRIGHT
     Assistant United States Attorneys

AGNIFILO INTRATER LLP
     Attorneys for Defendant
BY:  MARC ANTONY AGNIFILO
     KAREN FRIEDMAN AGNIFILO
     JACOB KAPLAN
     -and-
MOSKOWITZ COLSON GINSBERG & SCHULMAN LLP
BY:  AVRAHAM C. MOSKOWITZ
     EYLAN SCHULMAN
     CHRISTOPHER R. NEFF

Q1UJMANC

(Case called)

MR. GENTILE:  Good morning, your Honor.

Dominic Gentile, Jun Xiang, Alexandra Messiter, and Thomas John Wright for the United States.

THE COURT:  Good morning.

MS. FRIEDMAN AGNIFILO:  Good morning, your honor.

Karen Friedman Agnifilo, Marc Agnifilo, Jacob Kaplan, Avraham Moskowitz, Eylan Schulman, and Christopher Neff on behalf of Mr. Mangione.  Good morning.

THE COURT:  Good morning.

Everyone can be seated.  It's nice to see you all back again so quickly.  A couple of the usual reminders for counsel, we do have a live feed to the overflow room.  The overflow audio is very sensitive, so if you need to speak privately to each other or to your client, just make sure that you're muting the microphones before you do that.

I'll just remind our folks in the gallery that there's to be no disruptions or outbursts.  If there are any, you will be removed.  If you are one of the small number of people allowed to have a cell phone or other electronic device with you, I would just ask that you take a moment and make sure that everything is fully silent.  If any alerts or anything happen during the proceeding, the device will be seized and you may be removed.

Okay.  So as the parties know, this morning I issued

two written opinions resolving two of the defendant's pretrial motions, denying his motion to suppress a backpack and its contents recovered by the police at the time of his arrest in Altoona, Pennsylvania, and granting his motion to dismiss Counts Three and Four on the legal ground that the stalking offenses that serve as predicates for those counts do not meet the legal definition of crimes of violence under federal law.

So as I noted in the opinion, the only practical effect of that decision in this case is that the remaining two counts of the indictment carry only a maximum penalty of life imprisonment without parole by statute, and so those counts are not capital eligible. So given that, I'm going to deny as moot the defendant's other motions that concern only the death penalty as a punishment and the capital process generally.

So Ms. Friedman Agnifilo, I recognize that one portion or one part of that motion that deals with the defendant's argument about prejudicial pretrial publicity might still be a motion that you would like me to consider even in a noncapital case. But given that the briefing that I have before me is so focused on the capital process and how that changes any potential analysis about pretrial publicity, I think what I'd suggest is that we just table that issue for now until we know what the government is going to do regarding any appeal. And then at an appropriate time, if you'd like to renew that motion with a new brief as to the case in general, I'm happy to give

Q1UJMANC

you the opportunity to do that.  But it seems to me that that is the most efficient way to proceed at this point.

MS. FRIEDMAN AGNIFILO:  Thank you, your Honor.

THE COURT:  Okay.  And am I correct that other than that issue, none of the other motions have continued relevance if this is not a capital trial?

MS. FRIEDMAN AGNIFILO:  We think that's right, your Honor.  Thank you.

THE COURT:  And of course I know you haven't had a long time to digest, and if there's something that you think is relevant still you'll let me know.

Okay.  And so as previewed by that, turning to you, Mr. Gentile, I know the government has the option of interlocutory appeal when counts are dismissed pretrial.  I know also that you haven't had much time with the opinion and that you'll need to consult with folks in your office and the Solicitor General's Office.  But am I correct that you're not prepared today to say whether the government intends to appeal?

MR. GENTILE:  That is correct, your Honor.

THE COURT:  Okay.  And given my familiarity with the process, I'm expecting that the government will file a protective notice, and then why don't we do this.  I'd like things to continue to proceed on the assumption that we're going to have a trial beginning on September 8.  I'll just ask Mr. Gentile that in 30 days from now, so --

Q1UJMANC

MR. GENTILE:  That's fine, Judge.

THE COURT:  For simplicity why don't we say four weeks, February 27.  If you know the answer prior to that, I of course ask you to tell me what the government intends to do. And if you still don't know for sure one way or the other, just send me a letter on February 27 telling me whatever you can tell me about the timeline for a decision on that issue.

MR. GENTILE:  We will, your Honor.  Thank you.

THE COURT:  Okay.  I have two other things I'd like to raise, and then of course I'm happy to hear from counsel as always.  The first is a jury questionnaire.  I did receive your letter last evening.  Thank you.  I want to consult further with the jury department and get their advice.  But I'll tell you my immediate reaction is that I think distributing questionnaires nearly three months before we begin in-person jury selection is too long.

I think in *Saipov* that time period was about a month between distribution of questionnaires and reconvening to deal with agreed upon strikes, a little less than a month.  In other high profile cases in which a lengthy questionnaire is used to prescreen jurors, around a month or six weeks is a more normal time.  And the reason for that, of course, is that if the time period is too long, if the gap is too long between when prospective jurors are filling out their questionnaire and when we actually see them in person or start to screen them out, a

Q1UJMANC

lot can happen in the news cycle and in jurors' own lives in three months.  And it really decreases the utility of using a questionnaire to prescreen if the gap in time is too long.

So I'm going to consider all of that and talk to our experts in the jury department about the logistics.  I've had initial conversations with them, but specifically on the amount of time I want to speak to them.  But Mr. Gentile or Ms. Friedman Agnifilo, is there anything either of you would like to say about that issue?

MR. GENTILE:  Yes, your Honor.  The government has conferred with a number of prosecutors who've been involved in capital cases including our capital case section, as I'm sure the Court is familiar with.  What happened in *Saipov* is probably not a good example for the Court to follow with respect to the juror questionnaires.  It was truncated and it was a very difficult process for both sides, so we wouldn't use that as the example.

Right now, there's a case up in Buffalo called *Gendron*, and they are following something along this line as far as the timeline goes.  And what I would add is that the notoriety of this case, which continues to grow each day with each Court appearance, whether it's in the state or in this court, I think really requires that an enormous amount of questionnaires be put forward.

In other words, I think in *Saipov* the amount of

Q1UJMANC

questionnaires was well under a thousand.  I think we would exceed that considerably in this case.  So the three-month period we feel, at least from the government's side, is adequate and would allow both sides to go through those questionnaires and to provide the Court with a qualified jury regardless of the fact that it's no longer a capital case.

THE COURT:  Ms. Friedman Agnifilo, is there anything you'd like to say?

MS. FRIEDMAN AGNIFILO:  Yes, your Honor.  We have been meeting and conferring with the prosecution, and we agree as well that we think we need more time, perhaps even if it's not the full three months, but just more time than the average normal case.

And we just wanted to bring something to your Honor's attention.  We realize it's a separate case, but two days ago we got a surprise request from the Manhattan DA's Office after your Honor had already set a trial schedule, I think attempting to try and get that case to go July 1, and we're going to respond to that next week in state court.  But we just wanted to let the Court know that we have every intention of keeping this Court's trial schedule.  And part of it, I think, is this lengthy jury selection process.

THE COURT:  I know I am aware of the letter that Mr. Seidemann filed with Justice Carro.  You know, as I said from the outset, unless and until someone wants to make an

Q1UJMANC

application to me, my view is that that case is none of my concern. And I certainly can't, you know -- we have to proceed as if this is the only case, unless of course the government or defense or if the Manhattan District Attorney wanted to send me a letter or something, we'll deal with that as it comes.

But yes, our trial date is firm subject only to whatever actions are beyond my control. If the government elects to appeal the dismissal of Counts Three and Four, then we're all sort of on pause while we wait for the circuit to make its decision. And we'll address that situation if that's where we are and what the consequences might be of that.

You know, on the number of jurors, this case has received a great deal of attention, but the district is no stranger to trials that have received a great deal of attention or defendants who are quite well known. You know, we had the Sean Combs trial last year, and he was a defendant who was, unlike Mr. Mangione, quite well known prior to committing the crimes that he was charged with. So a thousand in a noncapital case, I just don't think that that is realistic or necessary.

So if the case continues to be a noncapital case, I'm thinking a venire of more like maybe 400 will be adequate. Again, I'm going to talk to the jury department and get sort of their refreshed numbers on the venires that they have called for cases of similar notoriety. I of course share the parties' concern that I want to make sure we have enough time, that the

Q1UJMANC

process is carefully considered, that we are using the process to ensure that jurors who cannot be fair to either side are not seated on our jury. So I take that very seriously, and I absolutely share the parties' concerns that together we devise a process that produces that result. But I'm also mindful of the fact that jurors are regular people who have jobs and lives. Our jury department is very busy, and so I don't want to embark on a course that is totally unnecessary and inconveniences a lot of people and creates a great deal of expense that isn't necessary.

So I think the first thing will be to resolve the scheduling issue, which I will do next week. I expect next week to issue a scheduling order that deals with all of the pretrial deadlines that we've been discussing, including the date at which we're going to begin calling prospective jurors. We don't have to get into all this now, but just so that you all know, in case you're not familiar in this kind of situation, so for the Ghislaine Maxwell trial, for Sean Combs for some of these other high profile trials that had questionnaires, the jury department will call prospective jurors in batches. And they will have them go in batches to one of the large courtrooms at 500 Pearl and fill out the questionnaire. And they won't be told until they're seated and have the questionnaire what case they're a prospective juror for.

Q1UJMANC

I will either address them, or in all likelihood I think what's been done in some of these other trials is I'll make a video that counsel will review that just gives some introductory remarks to the prospective jurors before they start filling out the questionnaire.  So just that process to do the questionnaire will take several days or maybe even two weeks, so we'll build all of that in, the logistics and everything.  And I'll issue a scheduling order next week so that you have those dates in mind and we can all plan.  Okay.

All right.  So the second item on my list is that I would like to speak ex parte to Mr. Moskowitz, who is court-appointed learned counsel in a capital case.  I want to be clear I'm not going to dismiss Mr. Moskowitz, certainly not now and perhaps not ever.  I'm certainly not even going to consider doing that until the government has made a final decision about whether it's going to appeal my opinion.  But I would like to speak to him privately about how to navigate that role in the interim.  And because that conversation could potentially involve some revealing of defense strategy, I think I can only do that if that's under seal and ex parte.  But of course, Mr. Gentile, I don't want to do that if you have some objection to me proceeding in that way.

MR. GENTILE:  We do not, your Honor.  But is your Honor's inquiry focused on the learned counsel role that he occupied?

Q1UJMANC

THE COURT:  Oh, yes, I really -- I mean, it won't surprise anyone to learn that there's been an enormous expenditure of public funds, appropriately so in a capital case, in order to give the defendant the mitigation investigation and preparation for penalty phase that he's entitled to under federal law.  I would just like to have an understanding from Mr. Moskowitz about how we're going to deal with that situation.  While at present this is not a capital case, and it will remain not a capital case unless and until the government appeals my ruling and I'm reversed by the Second Circuit, if that's what happens.

So I really just would like to, as part of my role as a guardian of the public fisc, be able to speak to Mr. Moskowitz about what his intention is while that question is open, and of course not to inquire about what the defense is actually doing and their strategy to prepare for any penalty phase, but just to have a sense of what's on deck and whether any of that can be paused, delayed, you know, what are we looking at in terms of that process.

MR. GENTILE:  We have no objection, your Honor.

THE COURT:  And I assume, Mr. Moskowitz, that you are willing to speak to me?

MR. MOSKOWITZ:  Of course, your Honor.

THE COURT:  Okay.  All right.  So that is everything I had on my list.  As I said, I'll issue a scheduling order next

Q1UJMANC

week that will set out all the pretrial deadlines backing into our start of in-person jury selection on September 8.

Mr. Gentile, is there anything else that the government would like to raise before we talk about the speedy trial clock?

MR. GENTILE:  The only issue we wanted to address is just the followup on Ms. Agnifilo's comments.  Notwithstanding the fact that the government will follow its normal protocol with respect to its options under 18, United States Code, 3731, we are prepared to go to trial, and we are prepared to meet the schedule that the Court has set and whatever schedule the Court will set with regard to the questionnaires.  We believe that the federal interest in this case is compelling, and we are prepared to move forward.

THE COURT:  I appreciate that, Mr. Gentile.  And yes, I mean, if I haven't made it clear before, you know, unless and until someone asks me to do something different, I will be seeing you all on September 8 to begin in-person jury selection in this case.  Ms. Friedman Agnifilo?

MS. FRIEDMAN AGNIFILO:  Nothing further.  Thank you, your Honor.

THE COURT:  Mr. Gentile, do you have an application?

MR. GENTILE:  We do, your Honor.  The government moves to have the time between today and October 12 excluded from the provisions of the Speedy Trial Act to allow both sides to

Q1UJMANC

prepare for trial.

THE COURT:  Ms. Agnifilo, any objection?

MS. FRIEDMAN AGNIFILO:  One second, your Honor.

(Counsel and defendant conferred)

MS. FRIEDMAN AGNIFILO:  We have no objection.  Thank you, Judge.

THE COURT:  I will exclude the time from today until October 12, 2026, which is the date that the presentation of evidence is expected to begin in this case.  I find the ends of justice served by excluding the time outweigh the interests of the public and the defendant in a speedy trial because time is needed to continue preparing for trial on both sides, for the Court to make arrangements to ensure that we have a fair and sufficient jury pool, for counsel to prepare any pretrial motions such as motions *in limine*, proposed jury charges, and other filings.  Accordingly, the time is excluded until October 12.  Mr. Mangione will remain in the custody of the marshals.  Anything further, Mr. Gentile?

MR. GENTILE:  Not from the government, Judge.

MS. FRIEDMAN AGNIFILO:  No, your Honor.  Thank you.

THE COURT:  All right.  Thank you all.  I'm not sure when I'll see you next, but we'll figure that out as it comes. And worst case, I will see you in August for a final pretrial conference.  All right.  We're adjourned.  Thank you, everyone.

(Adjourned)