

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 11, 2026

**VIA ECF**

Honorable Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     **Re:**    *United States v. Luigi Nicholas Mangione*, **25 Cr. 176 (MMG)**

Dear Judge Garnett:

    On May 4, 2026, the Government submitted a list of juror questionnaire questions as to which the parties are in agreement. The defense also submitted a version of the questionnaire, highlighting in yellow, the questions it proposed to which the Government objects (the "Disputed Questions"). As per the Court's April 2, 2026 order, the Government respectfully submits this letter setting forth the basis for its objections to the Disputed Questions. To avoid confusion, both the Disputed Questions and the questions as to which there are agreement are referenced using the numbers in the defense's version of the questionnaire.

<u>Applicable Law</u>

    A criminal defendant has a constitutional "right to a fair trial by an impartial jury." *Mu'Min v. Virginia*, 500 U.S. 415, 439 n. 1 (1991). At the same time, however, "the trial court retains great latitude in deciding what questions should be asked on *voir dire*." *Id.* at 424; *accord Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire.").

    Consistent with that broad discretion, courts in this Circuit routinely limit *voir dire* and juror questionnaires to questions reasonably directed toward uncovering actual bias or inability to follow the law. *See United States v. Barnes*, 604 F.2d 121, 138 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal."). Courts likewise may properly exclude questions that are cumulative, unnecessarily intrusive, argumentative, or designed to condition jurors to a party's theory of the case. *See Mu'Min*, 500 U.S. at 424-25 (recognizing trial courts' authority to limit unnecessarily intrusive questioning that "might make the jurors feel that they themselves were on trial."); *Barnes*, 604 F.2d at 138 ("[I]n our opinion the purpose of the *voir dire* is to ascertain disqualifications, not to afford individual analysis in depth to permit a party to choose a jury that fits into some mold

that he believes appropriate for his case."); *United States v. Tutino*, 883 F.2d 1125, 1133 (2d Cir. 1989) ("although the questioning must be fair, it need not include specific points requested by a particular defendant"); *United States v. Taylor*, 562 F.2d 1345, 1355 (2d Cir. 1977) (proper to deny inquiries into prospective jurors' educational backgrounds and questions designed to elicit information about jurors' children); *United States v. Workman*, 454 F.2d 1124, 1128 (9th Cir. 1972) (upholding district court's refusal to ask about attitudes toward drug use, political activists, and antiwar demonstrators in prosecution of antiwar demonstrator for assault on policeman and destruction of government property).

This principle applies with particular force to juror questionnaires. Although written questionnaires may assist the Court in selecting an impartial jury in high-profile cases, courts must balance that utility against concerns about juror privacy, juror candor, efficiency, and the risk that questionnaires become vehicles for advocacy rather than neutral screening. *See United States v. McVeigh*, 153 F.3d 1166, 1207 (10th Cir. 1998) (affirming exclusion of proposed *voir dire* questions where the "defendant seeks to ask a juror to speculate or precommit on how that juror might vote based on any particular facts"); *United States v. Fell*, 372 F. Supp. 2d 766, 770 (D. Vt. 2005) ("Stake-out questions are those that ask a juror to speculate or precommit to how that juror might vote based on any particular facts. Clearly, such questions are improper."); *United States v. Gotti*, No. 02 Cr. 743 (RCC), 2004 WL 2274712, at *14 (S.D.N.Y. Oct. 7, 2004) (limiting *voir dire* into juror identity to maintain integrity of judicial process); *see also Yarborough v. United States*, 230 F.2d 56 (4th Cir. 1956) (finding no error in declining to inquire into jurors religious backgrounds and affiliations since no matter of religious significance was involved).

Accordingly, where proposed questions are duplicative, seek highly personal information unrelated to juror impartiality, or risk embedding advocacy and legal argument into the *voir dire* process itself, this Court should decline to include them.

Objections to Proposed Questions

- Disputed Questions 5, 6, 7(a), 7(c), and 8 are unnecessarily intrusive. Questions 7, 7(b), and 9 elicit sufficient information about jurors' professional and educational backgrounds.

- Disputed Question 14(a)—which asks jurors to list, among other personal details, the ages, genders, occupations, and education histories of their children—is unnecessarily intrusive. The Government does not object to Question 14, which asks whether a juror has children.

- Disputed Question 15 asks jurors about how often they attend religious services. This question is inappropriate because a juror's religious practices have no bearing on the juror's fitness to serve. The Government does not object to Question 16, which asks whether a juror's moral, religious, or ethical beliefs would prevent the juror from sitting in judgment of another person.

- Disputed Questions 18, 22, 23, 24, and 25 are duplicative of other questions.

- The Government does not object to Question 39 overall, but believes the last subpart of the question is duplicative of Question 40.

- The Government does not object to Question 41 overall, but believes it is not appropriate to elicit whether a juror has been "investigated" or "targeted" in connection with a criminal matter. Criminal investigations are confidential and often governed by grand jury secrecy rules. Moreover, whether someone has been "investigated" or treated as an investigative "target" is not always clear. By contrast, being arrested or charged with a crime is an objective and public fact.

- Disputed Question 45 is duplicative of other questions.

- Disputed Question 46 is overbroad. Mere familiarity with heavily trafficked public areas and establishments in midtown Manhattan has little to no bearing on a juror's ability to remain fair and impartial. Moreover, the question is not reasonably tailored to uncover actual bias. The relevant inquiry is whether a juror has any connection to the case, the parties, witnesses, or events that would impair impartiality—not whether the juror has visited or knows of a prominent Manhattan location.

- Disputed Question 50 is duplicative of other questions, except that the Government does not objection to subpart(c).

- Disputed Questions 54 through 64 are unnecessary. The Government does not object to Questions 51 through 53, which are sufficient to elicit whether a juror holds any views about the healthcare insurance industry that would prevent the juror from being fair and impartial.

- Disputed Questions 66 and 67 are not necessary because the Court can offer the relevant instructions as part of its preliminary (and final) jury instructions.

- Disputed Question 73(a) through (c) are unnecessary and risk confusing the jurors. The Court will instruct the jurors on the presumption of innocence and the Government's burden.

- Disputed Questions 78 and 80 through 83 are unnecessary. The Government does not object to Questions 74 through 77 and 79, which are sufficient to elicit whether a juror has been exposed to media or press that would prevent the juror from being fair and impartial.

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States Attorney
Acting Under Authority Conferred by
28 U.S.C. § 515

By:          _____/s/_____
Dominic A. Gentile
Jun Xiang
Alexandra S. Messiter
Thomas John Wright
Assistant United States Attorneys
(212) 637-2200

(By ECF) All Counsel of Record